**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carl G. Burkin,<br><br>        Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>        Defendant. | No. CV-11-446-PHX-SMM<br><br>**MEMORANDUM OF DECISION<br>AND ORDER** |

Carl G. Burkin seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3) of the final decision of the Commissioner of Social Security ("Commissioner"), which denied him disability insurance benefits and supplemental security income under the Social Security Act. (Doc. 1.[1]) Burkin asks this Court to vacate the Commissioner's denial. (Doc. 18.) The Commissioner filed his Answering Brief (Doc. 19), and Burkin filed his Reply (Doc. 20). For all of the reasons that follow, the Court finds that the Commissioner's decision is neither supported by substantial evidence nor free from harmful legal error. The Court will remand this case to the Commissioner for an award of benefits.

## BACKGROUND

Carl Burkin was born on October 11, 1975. (Tr 26.) Burkin was diagnosed with a

---

[1] "Doc." refers to the documents in this Court's file. "Tr." refers to the administrative transcript. A certified copy of the administrative transcript was provided to this Court by the Commissioner of the Social Security Administration on May 20, 2011. (See Doc. 9.)

1    bipolar mental disorder at the age of 5 and placed on medication. (Tr. 29.) Burkin is a high
2    school graduate. (Id.) Burkin attempted suicide twice when he was 29 years-old. (Tr. 30.)
3    Burkin's employment history shows that he has worked as an appointment setter for an
4    insurance company and a warehouse clerk. (Tr. 26-27.) Burkin alleged disability on account
5    of the severity of his bipolar disorder. (Tr. 18.)

6    Burkin filed an application for Social Security disability insurance benefits and
7    supplemental security income on February 16, 2007. (Tr. 95-98, 103-05.) In his application,
8    Burkin alleged that he became disabled as of February 3, 2007. (Id. (otherwise referred to
9    as "disability onset date").) Burkin testified that he quit his last job when he had a nervous
10   breakdown. (Tr. 26-27 ("I was cutting myself and I just–the stress, I couldn't take anymore
11   . . .", 133.) He alleged that he cannot return to work due to his manic depression, mental
12   illness, and anxiety. (Id.) Burkin testified that he is 33 years-old and has had 30 jobs, with
13   the longest job he held being one year. (Tr. 33.) Burkin testified he cannot stay focused or
14   on task, that he loses interest in things very quickly, and has conflicts with other employees.
15   (Id.) His application was denied initially on September 17, 2007, and upon reconsideration
16   on January 31, 2008. (Tr. 41-42, 43-44.) Burkin sought an administrative hearing before an
17   administrative law judge ("ALJ"). A hearing before the ALJ was held on June 23, 2009.
18   (Tr. 22-40.) At the hearing, Burkin testified as well as an impartial vocational expert,
19   George J. Bluth. (Id.) On October 21, 2009, the ALJ determined that Burkin was not
20   disabled for the purpose of receiving disability insurance benefits or supplemental security
21   income because even though he cannot perform past relevant work, there was work he could
22   perform despite his limitations. (Tr. 13-21.) The ALJ concluded that Burkin was able to
23   adjust to perform other jobs that exist in significant numbers either in the Phoenix region
24   where he lives or in several regions of the country. (Tr. 19-21.) This decision became the
25   Commissioner's final decision when the Social Security Appeals Council denied review. (Tr.
26   1-4.)

27   **STANDARD OF REVIEW**

28   When reviewing a Social Security appeal, the Commissioner's decision must be

- 2 -

affirmed if it is supported by substantial evidence and he applied the correct legal standards. See Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). When reviewing the Commissioner's factual determinations, acting through the ALJ, this Court will affirm if there is substantial evidence supporting those determinations. See Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003); Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is more than a mere scintilla, but less than a preponderance. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). Substantial evidence is relevant evidence which a reasonable person might accept as adequate to support a conclusion based on the entire record. Howard, 341 F.3d at 1011; Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the Court may not substitute its judgment for that of the Commissioner. See Batson, 359 F.3d at 1193; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. See Benton, 331 F.3d at 1040; Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). The ALJ's legal determinations are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. See Edlund, 253 F.3d at 1156; McNatt v. Apfel, 201 F.3d 1084, 1087 (9th Cir. 2000).

## COMMISSIONER'S DISABILITY EVALUATION PROCESS

To qualify for Social Security disability benefits, Burkin must show that he suffers from a "medically determinable physical or mental impairment" that prevents him from performing his prior work activities and any other substantial gainful employment that exists in the national economy, and that the impairment "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. § 423(d)(1)(A). Further, Burkin's disabled status must have existed on or before the expiration of his disability insurance, often referred to as the date last insured. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Tidwill v. Apfel, 161 F.3d 599, 601 (9th Cir.

1   1998); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1459 (9th Cir. 1995).

2   Social Security regulations prescribe a five-step evaluation process for an ALJ to
3   determine if a claimant is disabled within the meaning of the Social Security Act. See
4   Batson, 359 F.3d at 1190, 1194; 20 C.F.R. § 404.1520. At step one, the ALJ determines if
5   the claimant is presently engaged in substantial gainful activity. See 20 C.F.R. §
6   404.1520(b). If the claimant is engaged in substantial gainful activity, then he is not disabled.
7   If not, the ALJ moves to step two to determine if the claimant has impairments or
8   combinations of impairments that significantly limit the claimant's physical or mental ability
9   to do basic work activities and are thus "severe" within the meaning of the regulation. See
10  id. § 404.1520(c).  At the third step, the ALJ evaluates if the claimant's impairment meets
11  or medically equals the criteria of a listed impairment found in Appendix 1 of Subpart P of
12  Regulation No. 404.  If yes, and the impairment meets the requirements for duration under
13  20 C.F.R. § 404.1509, the claimant is disabled.  If the claimant fails to meet or equal the
14  criteria or fails the duration requirement, the ALJ's analysis moves to step four.  See 20
15  C.F.R. § 404.1520(e).  Under step four, the ALJ determines the claimant's residual
16  functional capacity ("RFC"), which is the continued ability of the claimant to perform
17  physical or mental work activities despite his impairment or combination of impairments.[2]
18  See id.  The ALJ also determines if the claimant's RFC allows him to perform past relevant
19  work.  See id. § 404.1520(f).  If yes, the claimant is not disabled.  If not, the analysis
20  proceeds to a fifth step where the burden shifts to the Commissioner to demonstrate that the
21  claimant is not disabled by presenting evidence the claimant retains sufficient RFC to adjust
22  to perform other jobs that exist in significant numbers either in the region where the claimant
23  lives or in several regions of the country.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §
24  404.1520(g).

25  In this case, Burkin's last insured date was March 31, 2011. (Tr. 24.) In determining

---

[2] Mental limitations, nonexertional capacity, considers all work-related limitations and restrictions that do not depend on an individual's physical strength, such as difficulties in concentration. SSR 96-8p.

- 4 -

whether or not Burkin was disabled since the date of onset of alleged disability, February 3, 2007, the ALJ moved through steps one, two and three finding that Burkin was not disabled. (Tr. 15-16.) Prior to a step four evaluation, the ALJ evaluated Burkin's RFC and found that he was limited to simple work with minimal social and public contact. (Tr. 17-19.) Based on Burkin's RFC assessment and the vocational expert's testimony, at step four the ALJ found that Burkin could not perform his past relevant work due to his limitation with public contact. (Tr. 19.) However, the ALJ found at step five that the Commissioner established that Burkin retained sufficient RFC to adjust to perform other jobs existing in significant numbers either in the region where he lives or in several regions of the country. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g). (Tr. 19-21.)

**DISCUSSION**

**A. Step Five of the Sequential Evaluation Process**

At the fifth step, the burden shifts to the Social Security Administration to demonstrate that the claimant is not disabled and that he can engage in some type of substantial gainful activity that exists in "significant numbers" in the national economy. The ALJ considers the fact that the claimant cannot do the work that he has done in the past because of a severe impairment, considers the claimant's RFC, the claimant's age, education, and work experience, and determines whether the claimant can do any other work in the national economy. The ALJ will find the claimant disabled if she determines the claimant unable to adjust to any other work. See 20 C.F.R. §§ 404.1520(g), 416.920(g). See also Lockwood v. Comm'r of Soc. Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010) (where claimant establishes that she suffers from a severe impairment that prevents her from doing past work, burden shifts to the Commissioner to show that she can perform some other work); Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009) (the burden shifts to Commissioner at step five to show the claimant can do other kinds of work).

The step five analysis includes a detailed assessment of the medical evidence, the claimant's daily activities, prior work record, any functional restrictions and limitations, medication and other treatment for relief of symptoms, and information and observations by

treating and examining physicians and third parties regarding the nature and extent of the claimant's symptoms. See 20 C.F.R. §§ 404.1529, 416.929. Credibility determinations are the province of the ALJ; however, the ALJ must make specific findings which support a conclusion that claimant's allegations of severity are not credible. See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

**B. ALJ Rationale**

The ALJ found conflicting opinion evidence in this case. (Tr. 16-19.) The ALJ weighed the conflicting opinions and concluded that Burkin was not disabled. (Tr. 19-20.) The ALJ also rejected Burkin's subjective symptom testimony that he could not continue to work. (Tr. 19.) The ALJ found that although Burkin could not return to his past relevant work, he had acquired work skills that were transferable to other occupations with jobs existing in significant numbers in the national economy. (Tr. 19-20.) The ALJ credited the vocational expert testifying that Burkin could perform work as a janitor, an assembly worker, or in quality control. (Tr. 20.)

**1. Opinion Evidence**

Burkin argues that the ALJ decision is based on reversible legal error and does not rest upon substantial evidence. Burkin specifically argues that the ALJ erroneously rejected the opinion of his treating physician, Dr. Jayant Geete, who concluded that he was unable to work; erred by failing to assign proper weight to the opinion of state agency examining psychiatrist, Dr. Robert Narvaiz, who concluded that Burkin had several marked mental limitations affecting his ability to work; and erred by assigning improper weight to the opinions of non-examining state agency physicians who reviewed his file, opined that he had only moderate mental limitations, and found him able to work.

Social Security Rules expressly require that a treating doctor's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2). In weighing medical

1  source opinions in Social Security cases, the Ninth Circuit distinguishes among three types
2  of physicians: (1) treating physicians, who actually treat the claimant; (2) examining
3  physicians, who examine but do not treat the claimant; and (3) non-examining physicians,
4  who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir.
5  1995). Generally, more weight is given to the opinion of a treating physician than to the
6  opinions of non-treating physicians because a treating physician is employed to cure and has
7  a greater opportunity to know and observe the patient as an individual. See Andrews v.
8  Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995). Where a treating physician's opinion is not
9  contradicted by another physician, it may be rejected only for "clear and convincing"
10 reasons, and where it is contradicted, it may not be rejected without "specific and legitimate
11 reasons" supported by substantial evidence in the record. Lester, 81 F.3d at 830.

12 Similarly, the Ninth Circuit generally holds that greater weight is to be given to the
13 opinion of an examining physician over and above the opinion of a non-examining
14 physician. See Andrews, 53 F.3d at 1041. As with a treating physician, the ALJ may reject
15 the opinion of an examining physician, even if contradicted by a non-examining physician,
16 only by providing specific, legitimate reasons that are supported by substantial evidence in
17 the record. See Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).

18                    Treating Psychiatrist, Dr. Jayant Geete

19 Dr. Jayant Geete, M.D., a psychiatrist at Value Options/Magellan, is Burkin's treating
20 psychiatrist. (Doc. 18 at 5.) Dr. Geete's consistent diagnosis has been bipolar disorder.
21 (See, e.g., Tr. 197; see also Doc. 18 at 5.) On February 15, 2007, Dr. Geete noted that
22 Burkin recently had been released from urgent psychiatric care, and was feeling better. (Tr.
23 214-15.) He described Burkin as cooperative, but depressed and anxious, with delusions and
24 hallucinations. (Tr. 214.) Dr. Geete diagnosed bipolar disorder and anxiety disorder, with
25 a global assessment of functioning of 60. (Doc. 18 at 5.) Global assessment of functioning
26 ("GAF") is a rating system used by the American Psychiatric Association "for reporting the
27 clinician's judgment of the individual's overall level of functioning." (Doc. 18 at 5 (citation
28 omitted).) A GAF of 51-60 describes moderate symptoms, e.g., flat affect, circumstantial

1 speech, occasional panic attacks, or moderate difficulty in social, occupational, or school
2 functioning, e.g., few friends, conflicts with peers and coworkers; a GAF of 61-70 describes
3 some mild symptoms, e.g., depressed mood, mild insomnia or some difficulty in social,
4 occupational, or school functioning, but generally functioning pretty well, has some
5 meaningful interpersonal relationships. (Id.)

6 On October 17, 2007, Dr. Geete reported, "I am treating Mr. Carl Burkin on [a]
7 regular basis with medication monitoring. He is currently unable to work because of his
8 serious mental illness (SMI)." (Tr. 269.) Dr. Geete continued to treat Burkin from October
9 through December 2007 with diagnoses including bipolar disorder and anxiety disorder.
10 GAF scores were in the 61-70 range. On October 17, 2007, Dr. Geete described Burkin as
11 cooperative, but depressed and anxious. (Tr. 273.) Burkin was described as "stable."
12 Diagnoses were bipolar disorder, anxiety disorder; GAF 65. (Tr. 273.) On November 21,
13 2007, Dr. Geete described Burkin as cooperative, but anxious. (Tr. 275.) Diagnoses were
14 bipolar disorder and anxiety disorder; GAF 70. (Tr. 276.) On December 19, 2007, Dr. Geete
15 noted Burkin reported feeling "manic." Burkin was cooperative, but depressed and anxious,
16 with paranoia. (Tr. 277.) Diagnoses were bipolar disorder, attention deficit/hyperactivity
17 disorder, and anxiety disorder; GAF was 55 and that over the past year, Burkin's highest
18 GAF was 70. (Tr. 278.) On January 2, 2008, Dr. Geete participated in Burkin's annual
19 behavioral health update and review. (Tr. 279-87.) Diagnosis was Bipolar I Disorder. (Tr.
20 283.) The justification for the diagnosis was anxiety, paranoia, racing thoughts, fluctuation
21 in mood, irritability, depression, and inability to sleep. (Tr. 283.) GAF was 65. (Tr. 284.)

22 The ALJ decision noted, but rejected Dr. Geete's opinion that Burkin was unable to
23 work because of his serious mental illness. (Tr. 18.) The ALJ discounted Dr. Geete's
24 opinion because Dr. Geete did not refer to any specific limitations that Burkin had that
25 would preclude him from working and because Burkin's GAF scores did not reflect
26 significant functional impairment. (Id.; Tr. 269.)

27 First, regarding the ALJ discounting Dr. Geete's opinion because it was conclusory
28 without any reference to supporting evidence in the treatment record (Tr. 269), an ALJ need

1 not accept the opinion of any physician, including a treating physician, if that opinion is
2 brief, conclusory, and inadequately supported by clinical findings. See Thomas v. Barnhart,
3 278 F.3d 947, 957 (9th Cir. 2002).

4 Next, regarding the ALJ's conclusion that Burkin's moderate GAF scores outweighed
5 Dr. Geete's opinion, Burkin argues that GAF scores do not directly correlate with a
6 claimant's work abilities. (Doc. 18 at 18-20.) Burkin argues that there is no direct
7 correlation between the two because GAF scores are assessed in a treatment setting, not a
8 work setting. (Id.) While Burkin does not argue that GAF scores are entirely irrelevant, he
9 argues that a GAF score is only a subjective rating of the clinician's judgment of the
10 individual's overall level of functioning. (See Doc. 19 at 12.) According to Burkin, the
11 rating of overall level of functioning only considers a patient's functioning within the
12 treatment setting, not specifically as a employment assessment. (Doc. 20 at 4.)

13 The parties do not dispute that Burkin's GAF scores are relevant. Burkin disputes the
14 weight that the ALJ assigned to Burkin's GAF scores in the context of her determination
15 regarding his ability to work. (Tr. 17-19; Doc. 18 at 18-19.) However, it is solely the duty
16 of the ALJ to weigh the evidence and resolve conflicts in the record. See Edlund, 253 F.3d
17 at 1156. The issue before the Court is whether the ALJ provided specific and legitimate
18 reasons supported by substantial evidence in the record for rejecting Dr. Geete's opinion.
19 See Lester, 81 F.3d at 830 (stating that a treating physician's opinion may not be rejected
20 without "specific and legitimate reasons" supported by substantial evidence in the record).

21 Specifically, the ALJ found that throughout the time period at issue, Burkin's GAF
22 scores suggested no significant functional impairments that would preclude substantial
23 gainful activity. (Tr. 17-19.) The fact that Plaintiff routinely had GAF scores that reflected
24 no more than moderate symptoms or limitations was a legitimate reason for the ALJ to
25 consider when determining whether Burkin was unable to work. There is substantial
26 evidence of Burkin's moderate GAF scores in the record. (See Doc. 19 at 11-12
27 (summarizing Burkin's GAF scores). Burkin's moderate GAF scores represent the
28 substantial evidence relied upon by the ALJ before rejecting Burkin's treating physician's

opinion. For all of these reasons the ALJ did not commit error in her rejection of Dr. Geete's opinion.

<u>Examining Psychiatrist, Robert Narvaiz</u>

In May 2007, following Burkin's application for disability benefits, at the behest of the state Disability Determination Services, Robert Narvaiz, M.D., a psychiatrist, examined Burkin and prepared a report and mental work capacity assessment. (Tr. 245.) Dr. Narvaiz diagnosed bipolar disorder, alcohol abuse four months partial remission, and marijuana abuse four months partial remission. (Tr. 237.) Dr. Narvaiz's mental work assessment reported that Burkin had marked limitations (i.e., having poor to no capacity) in his ability to work in coordination with others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 239-43.) Dr. Narvaiz assessed that Burkin had moderate limitations (i.e. fairly limited, but not precluded) in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; sustain an ordinary activity without special supervision; ask simple questions or request assistance. (<u>Id.</u>) Further, Dr. Narvaiz assessed that Burkin had mild limitations (i.e., not significantly limited) in his ability to remember locations and work-like procedures; understand and remember, and carry out very short and simple instructions; make simple work related decisions; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond to changes in the work setting; be aware of hazards; set realistic goals and make plans independently of others. (<u>Id.</u>)

At the hearing, the ALJ conceded that if she accepted the "marked" mental work limitations assessed by Dr. Narvaiz, it would preclude Burkin from performing sustained

1  work. (Tr. 38.) The ALJ reviewed Dr. Narvaiz's mental status evaluation and diagnosis of
2  Burkin in some detail. (Tr. 17-18.) The ALJ then acknowledged but did not discuss Dr.
3  Narvaiz's listing of two marked mental limitations, task completion and accepting
4  instruction/criticism appropriately from supervisors. (Tr. 18.) However, the ALJ failed to
5  acknowledge or discuss Dr. Narvaiz's listing of Burkin's three other marked mental
6  limitations. (Id.) The ALJ did not acknowledge or discuss any of Dr. Narvaiz's listing of
7  Burkin's moderate mental limitations. (Id.)

8  Despite the ALJ's concession that if she accepted the "marked" mental work
9  limitations assessed by Dr. Narvaiz, it would preclude Burkin from performing sustained
10 work (Tr. 38), the Commissioner contends that the ALJ accommodated Dr. Narvaiz's
11 opinion in her finding of non-disability. (Doc. 19 at 14.) The Court does not agree; Dr.
12 Narvaiz concluded that Burkin had five marked mental work limitations. The substance of
13 these limitations were not accommodated by the ALJ's finding of non-disability. The Ninth
14 Circuit requires a higher standard, finding that an ALJ must *explicitly discuss* her rejection
15 of the opinion of Dr. Narvaiz and setting forth specific reasons for crediting the opinions of
16 the non-examining state agency psychologists over Dr. Narvaiz that are supported by the
17 record. See Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996) (emphasis added). The
18 Court will now turn to discuss the ALJ's crediting of the non-examining, nontestifying state
19 agency psychologists, Drs. Bongiovani and Dalton.

20      Non-examining State Agency Psychologists Maryanne Bongiovani and Brady Dalton
21      On June 25, 2007, Maryanne Bongiovani, Ph.D., a state agency psychologist,
22 reviewed the record as part of Burkin's initial determination but did not examine Burkin, and
23 disagreed with Dr. Narvaiz's assessment: "The CE [consultative examination] doctor felt that
24 claimant would have marked limitations in task completion and social interaction. It is likely
25 that there would be moderate limitations in these areas of functioning but evidence in file
26 does not argue for marked limitations." (Tr. 252.) Dr. Bongiovani followed this statement
27 with observations that Burkin improved on medication (referencing a note before Dr.
28 Narvaiz's examination or even the onset of disability), interacted with friends, was

1  cooperative, and kept his mental health appointments. (Tr. 252.) Dr. Bongiovani felt Burkin
2  would do best working by himself but would be able to understand, remember and carry out
3  simple instructions, performing simple, repetitive work with some limitations. (Tr. 253.)
4  The ALJ agreed with and credited Dr. Bongiovani's statements. (Tr. 16.)

5  On January 30, 2008, Brady Dalton, Psy.D, reviewed the record as part of the
6  Commissioner's reconsideration of disability determination. (Tr. 300.) Dr. Dalton did not
7  examine Burkin, and recommended denying reconsideration concluding that Burkin appears
8  capable of simple work in a setting with limited social contacts. (Tr. 300.) The ALJ relied
9  upon this statement in her decision under review: "Specifically, the limitations described
10 by Dr. Dalton . . . are accepted, i.e., simple work in a setting with minima[l] social/public
11 contacts." (Tr. 16.)

12 If a non-examining physician's opinion contradicts the opinion of an examining
13 physician, but is not based on independent clinical findings or rests on clinical findings also
14 considered by the examining physician, then the ALJ may rely on the non-examining
15 physician's testimony to reject the examining physician's testimony only by providing
16 specific, legitimate reasons that are supported by substantial evidence. Morgan, 169 F.3d at
17 600. "Substantial evidence" can be the opinions of non-examining physicians "when [those
18 opinions] are supported by other evidence in the record and are consistent with it ." Id. The
19 ALJ can meet this burden by setting out a detailed and thorough summary of the facts and
20 conflicting clinical evidence, stating her interpretation thereof, and making findings. Id. at
21 600-01 (quotation omitted).

22 Here, the Court initially notes that the Ninth Circuit discounts the conclusions of a
23 non-examining physician when they do not testify at a hearing and subject themselves to
24 cross-examination. See Morgan, 169 F.3d at 600 ("Opinions of a non-examining, testifying
25 medical advisor may serve as substantial evidence when they are supported by other
26 evidence in the record and are consistent with it.") (citation omitted); Andrews, 53 F.3d at
27 1037 (finding ALJ was "entitled to adopt the opinion of the non-examining medical advisor,
28 who was present at the hearing and testified, and to discount the opinion of the examining

physician, because the ALJ gave specific and legitimate reasons for doing so that were based on substantial evidence in the record in addition to the non-examining psychologist's opinion").

Next, as explained above, the ALJ failed to provide sufficient explanation for why she was rejecting Dr. Narvaiz's opinion. The ALJ never stated that she was rejecting his opinion based on the finding of Drs. Bongiovani and Dalton; the ALJ only stated that she agreed with the findings of Drs. Bongiovani and Dalton. (Tr. 16,18.) Even assuming that the ALJ did intend to incorporate that weight into her rationale for rejecting the examining doctor's opinion, the ALJ still failed to provide any explanation beyond stating that Drs. Bongiovani and Dalton's findings were consistent with the evidence as a whole. (Tr. 16, 18.) Thus, the ALJ did not meet her burden of laying out "specific, legitimate reasons" for rejecting Dr. Narvaiz's opinion by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings." Morgan, 169 F.3d at 600-01. Thus, as well as the lack of testimony from Drs. Bongiovani and Dalton at the hearing, the ALJ's failures prevents the Court from finding that the opinions of Drs. Bongiovani and Dalton constitute substantial evidence for rejecting the opinion of Dr. Narvaiz, the examining physician.

**2. Burkin's Subjective Symptom Testimony**

Burkin contends that the ALJ improperly refused to credit his testimony about the severity of his subjective symptoms. (Doc. 18 at 27-32.)

"Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (quoting 42 U.S.C. § 423(d)(5)(A) (2006)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on [the] lack of objective medical evidence to fully corroborate the alleged severity of [those symptoms]." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he

or she may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). Specifically:

> The ALJ may consider at least the following factors when weighing the claimant's credibility: [the] claimant's reputation for truthfulness, inconsistencies either in [the] claimant's testimony or between her testimony and her conduct, [the] claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains.

Thomas v. Barnhart, 278 F.3d 947, 958-59(9th Cir. 2002) (internal quotations omitted). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Id. at 958.

Burkin testified that his mental impairments prevent him from working because of his nervous breakdown at his last job, the side effects from his medication, his inability to stay on task, his conflicts with people, particularly supervisors, and his fear that he may hurt someone in retaliation for being reprimanded. (Tr. 27-33.)

The ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 17.) In finding Burkin not credible, the ALJ relied on three factors: (1) Burkin's inconsistent testimony regarding his isolated lifestyle; (2) that Burkin's medication was generally effective in controlling his symptoms; and (3) the records from Burkin's ongoing treatment provider rating Burkin with a moderate limitation on his GAF scores. (Tr. 19.)

The ALJ relied on Burkin's contact with friends, his girlfriend, taking the bus and making doctor's appointments to support inconsistency in Burkin's testimony that he lives an isolated lifestyle. Here, the ALJ did not sufficiently explain how Burkin's social activity affected his RFC, which in this case is defined by his mental limitations, not by any physical limitations. Similarly, the ALJ did not properly explain or support her conclusion that Burkin's medication controls his symptoms given the variation in Burkin's GAF scores and

- 14 -

1  the opinion of an examining psychiatrist to the contrary.  Thus, the ALJ's findings are not
2  "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit
3  claimant's testimony."  Thomas, 278 F.3d at 958.  Thus, the ALJ erred in the manner in
4  which it discounted Plaintiff's subjective complaint testimony.[3]

## CONCLUSION

In this case, because the ALJ made findings unsupported by substantial evidence at step five, the Court sets aside the ALJ's denial of benefits.  See Thomas, 278 F.3d at 954. Having decided to vacate the ALJ's decision, the Court has the discretion to remand the case either for further proceedings or for an award benefits. See Reddick v. Chater, 157 F.3d 715, 728 (9th Cir. 1998). The rule in this Circuit is that the Court should:

> credit[ ] evidence and remand[ ] for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  The issue turns on the utility of further proceedings.  Here, there are no outstanding issues that remain to be resolved before it can be determined that Burkin is entitled to an award of benefits.  Therefore, pursuant to sentence 4 of the Social Security Act, 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), the Court remands this action to the Commissioner for a computation of benefits.

The Court is mindful of the challenges and difficulties before the ALJ when adjudicating these cases. The ALJ's are confronted with a significant caseload and limited resources. Also, the ALJ must apply conflicting standards against complex factual matters,

---

[3]The other factor on which the ALJ relied--the records from Burkin's ongoing treatment provider rating Burkin's GAF scores as a moderate limitation–is supported by substantial evidence in the record. However, because the ALJ did not find that this factor was independently sufficient to reject Burkin's subjective complaint testimony, the Court cannot conclude that the ALJ's error was harmless. See Batson, 359 F.3d at 1197 (finding an ALJ's error was harmless because the court determined that the error did not affect the ALJ's ultimate conclusion).

1 a situation that probably must be resolved through Congressional action. And, as may be
2 noted, the circuit's case law is sometimes at odds with the standards of the Commissioner,
3 but this Court is bound by circuit precedent, which in this instance requires reversal.

4 Accordingly,

5 **IT IS HEREBY ORDERED** that this matter is hereby **REVERSED and**
6 **REMANDED** to the Commissioner for a computation of benefits.

7 **IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment
8 accordingly.

9 DATED this 14th day of June, 2012.

Stephen M. McNamee
Senior United States District Judge